## LETHIN et ux, *Appellants,*
### *v.*
## DEPARTMENT OF REVENUE, *Respondent.*
## (TC 969, SC 24533)

563 P2d 687

Thomas B. Brand, of Brand, Lee, Ferris & Embick, Salem, argued the cause and filed a brief for appellants.

Alfred B. Thomas, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General and Theodore W. de Looze, Chief Tax Counsel.

Before Denecke, Chief Justice, and Bryson, Linde, and Davis, Justices.

LINDE, J.

**LINDE, J.**

Plaintiffs appealed to the Oregon Tax Court from an assessment of land by the Marion County Assessor at a value of $65,240 on January 1, 1974, which was affirmed by the county board of equalization and the Department of Revenue. This assessment was $17,890, or 40 per cent higher than the preceding year's assessment of the same land at $47,350, which had previously been affirmed by the Tax Court. Nevertheless, the Tax Court affirmed the 1974 assessment of $65,240, 6 OTR [2] (1976) (unpublished TC #969), and taxpayers appeal to this court.

The chief issue presented by the appeal is what significance the adjudication of the land's taxable value at $47,350 on January 1, 1973, has for establishing the taxable value of the same land, unchanged, on January 1, 1974. Taxpayers do not contend that the value in 1974 necessarily is the same as that found by the Tax Court in 1973, nor that the court's judgment for 1973 is res judicata on the proper assessment a year later; the 1974 assessment is a new case. They do contend, however, that the first Tax Court judgment establishes as a fact that the value of the land on January 1, 1973, was $47,350, and that it obligates the taxing authorities to justify the increased assessment for 1974 by pointing to reasons for the asserted change in value during the intervening year. But far from showing any changes during 1973, they say, the assessor based his 1974 appraisal of the land at $65,240 on the same evidence of comparable sales during 1970-1971 that a different appraiser had made the basis of his appraisal at $47,350 in the prior case. The Department does not deny this, but it contends that the 1974 assessment represented the true cash value of the land and that the 1973 assessment was erroneous and too low. The taxpayers, of course, maintain that this justification of the 40 per cent leap in valuation, upon the old evidence and without any showing of changed circumstances, is foreclosed by the

decision of the Tax Court affirming the 1973 valuation.

The opposing contentions raise the question whether and how collateral estoppel may apply in adjudications of the taxable value of property. The Tax Court rejected the taxpayers' argument, relying on its own precedent in *Mittleman v. State Tax Commission,* 2 OTR 105 (1965). In that case, the Tax Court held that its prior determination that real property was worth $31,500 for 1962-1963 did not establish the value of the same property for the succeeding year. The court found that "the weight of authority supports the proposition that a judicial determination of the value of real property for one year is not conclusive as to the value of the property for a subsequent year," citing cases and annotations in 150 ALR 6, 162 ALR 1204, and 84 CJS 1053, Taxation § 543. *Mittleman, supra,* 2 OTR at 106-107.

1. If that reflects what the taxpayer claimed in *Mittleman,* the court's statement was doubtless correct. An adjudication of true cash value on one tax date is not conclusive as to the value of the same property a year later, even without proof of changes involving the particular property or area. But the present plaintiffs' claim is more modest. They concede that inflation alone, without more, might support a higher valuation of otherwise unchanged property. They contend only that the first Tax Court decision involving their land is conclusive as to its value on January 1, 1973, the fact at issue in that case. Therefore the assessor cannot justify the 40 per cent higher 1974 appraisal by impeaching the 1973 assessment; he must show changed circumstances during the intervening year.

The argument thus claims preclusive effect as an evidentiary fact, or what Judge Learned Hand called a "mediate fact,"[1] in the present case for the 1973 value of $47,350 that was the "ultimate" fact at issue in the

---

[1] The *Evergreens v. Nunan,* 141 F2d 927 (2d Cir 1944), 152 ALR 1187.

preceding case. There is no reason in principle why an earlier determination should not be given this effect in successive tax litigation as in any other litigation, as long as the fact determined in the prior case was necessary to the earlier judgment and its possible significance for later tax controversies was not unforeseeable.[2] This has in fact been done in tax cases, for instance the determination of fair market value of depletable property on March 1, 1913 for federal income tax purposes in later years. *Donald v. J. J. White Lbr. Co.,* 68 F2d 441 (5th Cir 1934); *Portage Silica Co. v. Commissioner,* 89 F2d 958 (6th Cir 1937). But the force of the argument depends on what was actually decided in the earlier case for which the preclusive effect is later claimed.

In the present taxpayers' appeal from the 1973 assessment, the Tax Court sustained the assessor's appraisal of the land at $47,350 against taxpayers' efforts to prove a true cash value of $22,000. The Oregon Tax Court decides such appeals *de novo*; it does not affirm an assessment merely on substantial evidence supporting the Department's finding. ORS 305.425. If the court had reduced the 1973 valuation of the land to some figure less than $47,350, its judgment would have been an adjudication that the land on January 1, 1973, had that particular value, and it would be entitled to the preclusive effect taxpayers claim as to that fact. But when the court affirms the full assessment of the tax authorities, it decides only that the assessment is not too high. It does not decide as a fact that the property may not be worth even more than the appraisal. That issue neither is nor could be

---

[2]See Restatement of Judgments 2d (Tent. Draft #4, 1977) § 68 at pp. 3-6, 18-20; *cf.* Branscomb, *Collateral Estoppel in Tax Cases: Static and Separable Facts,* 37 Texas L Rev 584 (1959), with respect to federal law. A criterion of foreseeability for giving preclusive effect even to "evidentiary" or "mediate" facts squarely litigated in an earlier case is suggested by the draftsmen of the Restatement of Judgments 2d (Tent. Draft #1, 1973) 157-158, apparently following *Hyman v. Regenstein,* 258 F2d 502 (5th Cir 1958). See Casad, Res Judicata 148-149; Vestal, Res Judicata/Preclusion, V-251-256.

litigated by the parties to the appeal in the Tax Court, once the county assessor has made his assessment. Thus the court's affirmance of the assessment is not conclusive on this issue.

If we held that such an affirmance irrebuttably fixes the historic value of property for subsequent tax years, we would be giving the effect of collateral estoppel, not to a finding of the Tax Court, but to the administrative appraisal of the property by the county assessor. Administrative determinations are sometimes given such effect, depending on the formality of the administrative procedure and other factors,[3] but plaintiffs do not claim, and we do not believe, that Oregon tax procedures call for this effect of a county assessor's appraisal in one year upon an assessment in a different year. The assessor and the reviewing tax agencies remain free to determine a different value in the later year, even by disowning their prior valuation as erroneous, unless the Tax Court has altered that prior valuation on *de novo* review. But when the court does alter the Department of Revenue's assessment, the court's finding is conclusive with respect to the date at issue before it, and changes for other years must be explained by some difference in circumstances.

■■ In the present case, then, the Tax Court's earlier decision sustaining the 1973 assessment of taxpayers' land at the assessor's appraisal of $47,350 does not conclusively establish that the land was not worth more at that time, and thus does not prevent the assessor and the Department from reappraising and rearguing the value for 1974 on the same evidence. In the Tax Court the earlier assessment could serve as evidence to carry the taxpayers' burden of proof under ORS 305.427 and to shift to the Department the burden of coming forward with an explanation for its changed valuation of the land, but it did not preclude

---

[3]See cases collected in K. Davis, Administrative Law of the Seventies 427-432.

the Department's questioning the 1973 valuation as having been too low on the pre-1973 evidence.

This reliance on the evidence of the old sales to support a sharply higher appraisal in 1974 was the basis of plaintiffs' assignments of error in this court. The Tax Court expressed sympathy with plaintiffs' shock at the large increase from the assessment the court had affirmed a year before, but after reviewing the expert testimony presented in support of respondent's valuation of the land the court found that Mr. Lethin, who was his own single witness, had not carried the burden of proof imposed upon him by the statute. Our own independent review of the record does not lead us to conclude that the Tax Court was wrong.

Affirmed.