IN THE OREGON TAX COURT

WILLIAMSON et al
*v.*
DEPARTMENT OF REVENUE
(TC 1693)

J. F. Williamson, one of the plaintiffs, appeared on his own behalf, representing plaintiffs.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiffs rendered June 25, 1982.

## CARLISLE B. ROBERTS, Judge.

Plaintiffs appealed from the defendant's Order No. VL 81-1208, dated November 10, 1981, which affirmed the Multnomah County Board of Equalization's determination that the January 1, 1980, true cash value of plaintiffs' residence was $81,060. Plaintiffs sought to prove at trial that the value of the property on the assessment date was no greater than $73,000 (although they had pleaded $74,000).

The subject property is a large, conventional "rambler" home, with an attached garage and storage area, located at 4404 S.W. 52nd Avenue, Portland, Oregon. Although plaintiffs supervised the construction of the home in 1974, the residence was not custom designed, and is of standard quality. It is located in a fine residential area, convenient to shopping, schools, parks and public transportation. Southwest Hamilton Street, which borders the southern side of the property, is a Tri-Met bus route, and traffic is quite heavy at times.

A bit of background information is helpful to an understanding of this case. Almost two years ago, plaintiffs came before this court to challenge the Multnomah County Board of Equalization's determination of the value of the subject property as of January 1, 1979. At that time, Mr. Williamson, a plaintiff in this case, and a real property fee appraiser, presented a preponderance of the evidence regarding the value of the subject property. With minor exceptions, this court accepted Mr. Williamson's valuation of the subject property, reversed the Department of Revenue's affirmance of the board of equalization, and reduced the January 1, 1979, true cash value of the subject property from $77,470 to $67,550. (Tax Court No. 1399, decided December 17, 1980.)

In the tax year subject to this suit, 1980-1981, the assessor raised the true cash value of the subject property from the judicially determined 1979-1980 value of $67,550 to $92,900. The value was subsequently lowered to $81,060 by the Multnomah County Board of Equalization. In framing the presentation of the present case, plaintiffs proceeded upon the premise that this court's December 1980 determination of the January 1, 1979, value of the subject property established a

judicial base value for the subject property, shifting to the county assessor the burden of showing a change of circumstances which would justify an increase in value for the 1980-1981 year.

Although plaintiffs are not represented by an attorney, they cite *Lethin v. Dept. of Revenue,* 278 Or 201, 563 P2d 687 (1977), as the legal authority in support of their position. Because of the potential significance of *Lethin,* the court's analysis of that case is set out in full, below.

The taxpayers in *Lethin* appealed their 1973-1974 property tax assessment to the Oregon Tax Court. The Tax Court affirmed the Marion County Assessor's valuation of $47,350 over the taxpayers' asserted value of $22,000. For the 1974-1975 tax year, the Marion County Assessor raised the valuation of the taxpayers' property to $65,240. Plaintiffs again appealed to the Oregon Tax Court, arguing that the Tax Court's prior affirmance of the Marion County Assessor's 1973-1974 valuation was a judgment which established the fact of value for the 1973-1974 tax year, and that the taxing authority (county assessor) was required to justify any increase for the subsequent year by pointing to reasons for the change which had occurred in the intervening time. Relying upon the same appraisal used in the earlier case, the Department of Revenue argued that the assessor's 1973-1974 valuation on the property had been too low. In agreeing with the department, the Tax Court held that the taxpayers had not met their burden of proving the value which they alleged for 1974-1975, and that the 1974-1975 tax year should be considered as a separate year, not controlled by the Tax Court's ruling as to 1973-1974.

In affirming the Tax Court's ruling, the Supreme Court reasoned as follows: The general rule is that an adjudication of true cash value on one tax date is not conclusive as to the value of the same property a year later. The preclusive effect of the adjudication, if any, is to be determined by what actually was decided in the prior case. The Oregon Tax Court, in affirming the county assessor's 1973-1974 valuation of the Lethin property, decided only that the assessment was not too high. The issue of whether the property may have been worth more was not raised or decided. For this reason, the Tax Court's ruling was not entitled to a preclusive

effect. The court held as such, and continued its explanation. If, instead of merely affirming the assessor's valuation of the Lethin property, the Tax Court had found that the Lethins' asserted lower value was supported by a preponderance of the evidence, it would necessarily have adjudicated the fact of value, and its determination on that issue would be entitled to a preclusive effect. The court then added the following dictum:

> "* * * [W]hen the court does alter the Department of Revenue's assessment, the court's finding is conclusive with respect to the date at issue before it, and changes for other years must be explained by some difference in circumstances." *(Lethin,* at 206.)

Whatever the significance of that last-quoted portion of dictum, it is relied upon by the plaintiffs in this case as the basis for their assertion that the Tax Court's December 1980 ruling as to the January 1, 1979, value of the subject property shifts the burden of proof to the defendant in this case.

■ It is true that the prior ruling of this court as to the value of the subject property held that plaintiffs' asserted lower value was supported by a preponderance of the evidence. The ruling constitutes an adjudication of the fact of value on the Williamson property for the 1979-1980 tax year. According to dicta from *Lethin,* this determination is entitled to a certain preclusive effect. However, careful study of *Lethin* leads the court to conclude that the case does not require a reversal of the burden of proof in this case.

In the first place, the Supreme Court's actual holding in *Lethin,* as stated above, is very limited. The portion relied upon by plaintiffs is dictum, not related in any way to the facts of *Lethin.* Although dictum may, in certain cases, give an inkling of a court's inclination on an undisputed issue, it is not to be regarded as law.

Secondly, even if dictum in *Lethin* is to have the force of law, the case does not require that the burden of proof in this case be shifted to the Department of Revenue. It merely places upon "the Department of Revenue the burden of *coming forward*" (emphasis supplied) with new evidence in support of a value which is higher than the value determined by the court for the prior year.

In this case, the defendant's expert witness, Mr.

Henry G. Lawson, had prepared an appraisal report for the subject property which is different than that relied upon in the prior case. The defendant has thus satisfied its burden of coming forward with new evidence. The burden of *proving* a value which is lower than that set by the Department of Revenue still rests with the plaintiff.

In presenting their prima facie case, plaintiffs have not relied solely upon this court's prior ruling regarding the subject property. Mr. Williamson is a fee appraiser of enviable qualifications and experience. Appearing as an expert witness on behalf of the plaintiffs, he testified from and presented a detailed appraisal of the subject property.

Using the Marshall and Swift residential cost factors, Mr. Williamson first calculated the value of the subject property by way of the cost approach. Taking depreciation into account, he estimated the value of the subject improvement to be $55,400. Adding to that $19,250 for the value of the land and landscaping, he estimated a total value for the subject property of $74,650.

Believing that there are hazards in relying solely upon the cost approach in the valuation of residential property, Mr. Williamson sought market data for an indication of value. He studied numerous sales of properties and isolated five which he felt were more similar to the subject property. Each of these had sold within one and one-half years of the January 1, 1980, assessment date. Sales were carefully verified and Mr. Williamson was of the opinion that each sale had been the result of an arm's-length transaction.

Mr. Williamson made interior inspections of each of his comparables. Sales prices were adjusted for differences in size, condition, quality, landscaping, neighborhood, street improvements and garage size. Mr. Williamson stated that he based each adjustment upon his knowledge of the real estate market with respect to each item. A time adjustment of eight percent per year was also applied to each property. This was determined from the examination of three sources: the national real estate appreciation rate for 1979 of 11.3 percent; the Consumer Price Index, showing an increase in all consumer goods of 12.2 percent per year in 1979; and Mr. Williamson's calculation of appreciation based upon the sale

and resale of properties during the period in question, which indicated an annual appreciation rate of eight percent.

After applying all adjustments, Mr. Williamson determined that the alleged comparable properties indicated a value of $74,000 for the subject property. Considering this figure, the value indicated by the cost approach, and the January 1, 1979, value of $67,550 as determined by the Oregon Tax Court and adjusted for time, Mr. Williamson estimated a January 1, 1980, true cash value for the subject property of $73,000.

Mr. Henry G. Lawson, a certified residential appraiser for the Multnomah County Assessor's office, appeared as an expert witness on behalf of the Department of Revenue. He testified that he had made an inspection of the subject property and presented an appraisal report in support of his estimate of value.

Mr. Lawson also calculated the value of the subject property by way of the market approach. He first found a value for the land alone, based upon sales of three allegedly comparable vacant parcels. He estimated that these sales indicated a value of $27,000 for the land alone. He then estimated a value of $71,000 for the home, based upon sales of three allegedly comparable improved properties adjusted for time, site, quality, size, age, appliances, garage size, air conditioning, fireplaces and roof quality. Adding this to the previously determined land value, he estimated a total value for the subject property of $98,000.

Relying upon the Department of Revenue's Cost Factor Book, Mr. Lawson calculated the value of the subject property by way of the cost approach, and estimated a depreciated replacement cost of the subject improvement of $70,502. To this he added his estimate of the value of the land, for a total indicated replacement cost, rounded to $97,502. Concluding that the market approach was a more reliable indicator of value, he accepted $98,000 as his final estimate of value for the subject property. Thus, the defendant asserted a value which was more than 30 percent higher than that alleged by the plaintiff.

Upon cross-examination of Mr. Williamson, the defendant's representative brought to light a flaw in Mr.

Williamson's calculation of the time adjustment which he had applied to his comparable properties. Mr. Williamson identified three properties which had sold and resold during the time in question. In calculating the annual appreciation rate on those properties, he computed the difference between the sale and resale price on each property, and divided that figure by the resale price. The defendant's witness, Mr. Lawson, explained that the percentage of increase in the value of the property from sale to resale is more correctly calculated by dividing the difference between the sale and resale price by the earlier sale's price. Since prices were rising during this period, this would necessarily reflect a higher rate of appreciation; however, the defendant did not present evidence as to the exact effect, if any, that this would have upon the indicated appreciation rate of eight percent per year. Although an eight percent annual rate of appreciation seems to be conservatively low, it appears to be within an acceptable range.

The defendant attacked Mr. Williamson's failure to rely upon an identifiable cost source (such as the Oregon Department of Revenue Residential Cost Factor Book or the Marshall Service) in applying the many adjustments to his comparable sales. Mr. Williamson explained his method of making adjustments as the "shopper's approach." Based upon his many years of experience in the real estate market, Mr. Williamson felt that he had acquired the knowledge to estimate what a typical buyer would be willing to spend for a particular amenity. He stated that this amount may bear little or no relationship to the actual cost of the item, but it would be an accurate reflection of the market.

If Mr. Williamson had relied strictly upon a cost factor book in determining his adjustments, his figures would certainly be easier to correlate and quantify. However, it cannot be said that his adjustments as made were unsupported. Other judgmental factors besides cost must enter into the appraiser's estimate of adjustments. In his well-known treatise on the valuation of real property, Alfred A. Ring sets out some of these factors. (Alfred A. Ring, *The Valuation of Real Estate,* 2d ed, 135-136; Defendant's Exhibit F.)

"1.  Building construction know-how.

"2.  Detailed property inspection and keen observation.

"3.  Knowledge of construction costs and building unit prices.

"4.  Knowledge of typical buyer preferences and price reactions.

"5.  Application of sound judgment to obtain reasonable results."

In short, relying upon all these items, the appraiser must ask himself: "How much more or less will a typical purchaser pay—as compared with the subject property—because of the presence or absence of major construction features?" (Ring, at 135.)

An examination of the record leads to the conclusion that in adjusting his comparable properties Mr. Williamson went through the exact mental process outlined above. It is not evident that the defendant's expert witness was as thorough. His adjustments were based primarily upon cost (with the exception of a swimming pool, to which he assigned no value). So far as the record shows, Mr. Lawson has had no building construction experience, unlike Mr. Williamson. Foremost in the court's mind is the fact that Mr. Lawson appeared to be only minimally familiar with the properties which he relied upon as comparables. In contrast, Mr. Williamson's knowledge of his comparable sales was extensive and detailed. Additionally, although Mr. Williamson admitted that he did not rely upon one particular cost source for his estimates of adjustments, there is no doubt that through his work as an appraiser, he has gained knowledge of construction prices and the costs of the various items for which adjustments are ordinarily made. He most certainly relied upon this knowledge in arriving at adjustment figures.

The defendant attempted to impeach the quality of Mr. Williamson's appraisal by having Mr. Lawson testify as to the different adjustments he would have made to comparables relied upon by Mr. Williamson. The value of this testimony is minimal since Mr. Lawson had not inspected Mr. Williamson's comparables, and therefore had no first-hand knowledge of them. Additionally, cross-examination of Mr. Lawson revealed that he had personally inspected the interior of only one of his own comparable properties, and had personally verified only one of the sales which he used in his appraisal as an indication of the value of the subject property.

Mr. Williamson's superior knowledge of the comparable properties and the circumstances surrounding their sales leads the court to conclude that he is in a better position to judge the weight to be accorded to each and to derive from them an indicated value for the subject property. For this reason, the court concludes that plaintiffs' estimate of value by way of the market approach is supported by a preponderance of the evidence. The court finds that the true cash value of the subject property was $74,000 on January 1, 1980. (Mr. Williamson did not determine a separate value for the land alone, using the market approach. The value of the property, therefore, will be apportioned betwen land and improvements in the same ratio as that presently used in the tax roll for the subject year.)

The court's opinion is based on a preponderance of the evidence (ORS 305.427), a highly subjective determination. More cases are tried before the Oregon Tax Court on the question of real property tax values than any other category. In a high percentage of these, the plaintiff is representing himself, as did Mr. Williamson in the present suit, without the aid of counsel and (unlike Mr. Williamson) without the aid of an expert in property valuation. Very few plaintiffs pro se are able to present a preponderance of the evidence, as against the formalistic approaches of an appraiser for the county with his broad foundation of appraisal information. *See Price v. Dept. of Rev.,* 7 OTR 18 (1977). Even those taxpayers who are intimately acquainted with their property often have difficulty presenting their knowledge in a persuasive fashion, if they have no background in appraisal techniques. *See Widmer v. Department of Revenue,* 4 OTR 361 (1971), *aff'd* 261 Or 371, 494 P2d 854 (1972).

In contrast, when facing the plaintiff pro se, the appraiser for the county is usually able to present a preponderance of the evidence, even though his personal knowledge of the property is limited. This is true although he is forced by the demands of the mass appraisal system and the assessor's limited financial resources to rely upon mechanical and routine appraisal techniques. However, when the plaintiff pro se has intimate knowledge of the property and also happens to be equipped with the skills of an experienced appraiser, the appraiser for the county faces a formidable challenge which,

due to the constraints placed upon his work, he is often ill-prepared to confront. Such was the case here.

The Director of the Department of Assessment and Taxation of Multnomah County, Oregon, shall amend the assessment and tax rolls for the tax year 1980-1981 in accordance with this opinion. If taxes have been paid by plaintiffs in excess of that required by the tax rolls as amended, the excess, with statutory interest thereon, shall be refunded to the plaintiffs by the Board of County Commissioners of Multnomah County, Oregon, pursuant to ORS 311.806 and 311.812.

Plaintiffs are entitled to their statutory costs and disbursements. (Inasmuch as the plaintiffs are not represented by a lawyer, the court has prepared a form of decree, a copy of which is enclosed. It will be executed 10 days after the date of mailing, unless objection thereto is submitted by defendant to the court by that time.)