# IN THE OREGON TAX COURT

## J. R. GOLF SERVICES, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 2003 and 2179)

Richard H. Renn, Albany, represented plaintiff.

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered October 24, 1985.

### CARL N. BYERS, Judge.

The property under appeal is an 18-hole golf course located on the northerly edge of the City of Albany but across the river in Benton County. Plaintiff appeals the assessed value as of January 1, 1981, January 1, 1982, and January 1, 1983. All three years were consolidated for trial.

This same golf course was the subject of an appeal for 1979-1980. Plaintiff requested and the court has taken judicial notice of the prior case which was decided January 26, 1982. In that case, this court found that the true cash value of the golf course, as of January 1, 1979, was $450,000. On the basis of that finding, plaintiff moved for judgment in favor of itself at the beginning and at the end of the trial in these cases. Citing

*Lethin v. Dept. of Rev.,* 278 Or 201, 563 P2d 687 (1977), plaintiff contends that it is entitled to judgment in its favor unless defendant shows a "difference in circumstances."

Plaintiff's brief states:

"Of particular importance is the fact that the Supreme Court was talking about changes in circumstances relative to the property itself which gives rise to a justified increased assessment." (Plaintiff's Brief, at 1-2.)

In *Lethin v. Dept. of Rev., supra,* there had been no changes in the condition of the property and no change in the evidence relied upon by the assessor. The assessor simply felt the court's determination of value for the first year was in error. Given these facts, the Supreme Court, in dicta, indicated that the assessor must show some "difference in circumstances" in order to overcome the "preclusive effect" of the court's finding of fact. Nothing in the opinion supports the contention that the different circumstances are limited to changes in the subject property. Such a rule could not be because there is a world of other facts which influence the value of property.[1]

In this case substantial changes occurred during the two years between the assessment date of the first case (January 1, 1979) and the assessment date of the earliest year in question (January 1, 1981). The evidence showed that from 1979 to 1981, the income of the property increased, Oregon's economy suffered a major downturn, land values "flattened," construction costs have continued to increase, and a number of golf courses sold. This evidence satisfies any test or burden of proof *Lethin* might otherwise impose. *Williamson v. Dept. of Rev.,* 9 OTR 166 (1982).

Plaintiff's motion was denied.

A substantial portion of plaintiff's evidence dealt with the history of the construction of the course and its current condition. The first nine holes appear to have been constructed in 1929 to 1930 and the second nine holes in the

---

[1] Only deity or Alan Greenspan could articulate all of the economic factors which influence the value of property. Even with the same evidence (comparable sales) and the same property, an appraiser might have a different opinion of value for a subsequent year depending upon the mood of Wall Street as to profits or the mood of the world as to peace.

late 1940's. The course is not scientifically designed nor a member of the country club set of golf courses. Scratched out of bottom land adjacent to the Willamette River, it is a small town course used mostly by the local inhabitants. The irrigation system is old and not in particularly good shape. The grass lays down instead of standing up in many areas and flooding or high water is a problem during heavy rains. Some ground sinkage occurs due to deteriorating vegetable matter buried under the ground. On the other hand, the course is attractive, has an excellent location and in some ways benefits from the drainage and apparent high water table.

One of plaintiff's witnesses was a qualified golf course architect who testified concerning the standards for construction of golf courses as established by the United States Golf Association. The witness also testified concerning the construction of the subject course and the costs which would be incurred in reproducing it. Plaintiff seeks a value of $450,000 based upon the evidence of the course history, its construction and the appraisal by its witness, Mr. Pyle.

Defendant relied on two appraisers. The first appraiser, Mr. Harry Stepp, initially appraised the property for the City of Albany. Defendant's evidence established that the City of Albany was at one time interested in purchasing the subject property. Mr. Stepp's appraisal, which he related to the assessment date of January 1, 1983, found a value of $925,000, which included $60,000 for buildings.[2]

Defendant's second appraisal witness was Mr. Charles Nelson, an appraiser for the Benton County Assessor's Office. Mr. Nelson found a value of $850,000 as of January 1, 1981, and that the values thereafter increased for the subsequent years.

It is necessary to comment only briefly on the appraisal evidence in explanation of the court's decision. In the cost approach, plaintiff's witness, Mr. Pyle, found that soil

---

[2] Plaintiff objected to Mr. Stepp's appraisal on the grounds that it violated ORS 192.500 with regard to confidential information. The evidence disclosed, however, that the property was not acquired by the City and that the City of Albany had released the appraisal for public information. Moreover, plaintiff failed to show any harm to the public interest by reason of a disclosure of the appraisal.

types were not important considerations in the price of farm-land properties. The court finds the evidence to the contrary. Mr. Nelson's land sales analysis was most persuasive both with regard to detail and logic. His finding of $256,000 for the land value was consistent with Mr. Stepp's finding of $255,000. Plaintiff also disputed the use of the Marshall-Stevens Cost Service in establishing the value of the golf course improvements on the land. Despite the lack of modern construction and other deficiencies, it appears that the subject property at least is a Class I course. Mr. Stepp, an experienced appraiser, indicated that he used golf course architects personally until he established that the Marshall-Stevens classifications were reliable. Based on the analysis by both Mr. Nelson and Mr. Stepp, the cost approach would indicate a value of $816,000 to $850,000 for the subject property.

The court's analysis of the income or capitalization approach to value focused primarily on the 1981 year, although the other years appear consistent. All of the appraisers relied on the income and expense statements which plaintiff furnished to the City of Albany in connection with the proposed purchase. Each of the appraisers utilized the income statements slightly differently. Defendant's appraisers included all of the golf course's income, including the lunch counter and pro shop, while plaintiff's appraiser used only the golf course (green fee) income.

Mr. Nelson utilized a capitalization rate of 15.1 percent, which provided for recovery of capital as well as a return on capital, and included property taxes. Mr. Stepp's capitalization rate of 14 percent included "depreciation" but not property taxes. Plaintiff's appraiser Mr. Pyle used a capitalization rate of 12 percent, but it did not provide for recovery of capital or include property taxes. On the whole, defendant's appraisers' analyses appear more correct and reliable than plaintiff's. Plaintiff's appraiser Mr. Pyle deducted all the property taxes of $12,997· and yet used only part of the income from the property. He also deducted a "Reserves for Replacement" of $20,381. If this item contemplates recovery of capital (depreciation) and the property has a useful life of 40 years, which appears reasonable, this reserve anticipates the owner recovering capital of $815,240. If it is not for recovery of capital, it is excessive.

Under the income approach, depreciation, interest expense, officer's life insurance and property taxes are properly eliminated as "expenses" under both General Administrative Expense and the golf course cost of sales. If these adjustments are made and General Administrative Expenses are allocated between the golf course, pro shop and lunch counter in proportion to gross sales, the golf course alone will result in net income of $123,903. Capitalizing this amount at 15.1 percent results in an indicated value of $820,550. Defendant's appraisers both found indications of $810,580 and a range of $720,000 to $925,750.

■ The court finds fewer reasons to feel comfortable about the market approach as used by the appraisers in this case. Mr. Pyle adjusted the sale of the Rockcreek Golf Course 55 percent down and the McNary Golf Course 35 percent down. On the other hand, Mr. Nelson adjusted the Oak Knoll Golf Course price 40 percent up and the Battlecreek Golf Course 52 percent up. Mr. Nelson's comparable sales, by far the greatest number, indicated an unadjusted average price of $38,000 per hole. After evaluating the comments and concerns of all of the appraisers, the court is persuaded that the market approach would indicate a value of approximately $40,000 per hole, or a total of $720,000 for the course.

Relying primarily upon the indications of value and the evidence found in the income approach and the cost approach, the court finds that the true cash value of the subject golf course for the years in question is as follows:

| | |
|---|---|
| January 1, 1981 | $800,000 |
| January 1, 1982 | $850,000 |
| January 1, 1983 | $900,000 |

Costs to neither party.