Board of Tax and Land Appeals
No. 92-074

APPEAL OF RICHARD SOKOLOW & a.
(New Hampshire Board of Tax and Land Appeals)

November 4, 1993

*Richard T. Sokolow*, by brief and orally, *pro se.*

*Hastings Law Office, P.A.*, of Fryeburg, Maine (*Peter G. Hastings* on the brief and orally), for the Town of Conway.

BATCHELDER, J.   The taxpayers, owners of condominium units at Artist Brook Condominiums in North Conway, appeal the New Hampshire Board of Tax and Land Appeal's (board) denial of their request for an abatement for the 1989 tax year. They argue that the board erred in ruling that they did not carry their burden of supplying it with information from which it could make an informed adjustment to their assessments. We reverse and remand.

The taxpayers own seven units in the condominium. None of the units in question has been issued a certificate of occupancy by the Town of Conway (town). The town did not issue certificates of occupancy because some of the units had structural defects and because a second access road to the condominium had not been constructed. Because the units do not have certificates of occupancy, they cannot be sold.

The taxpayers, arguing that their units should not be valued at the same rate as units with certificates of occupancy, appealed to the town for a tax abatement. The town denied the appeals. The taxpayers subsequently appealed to the board. Although the board ruled that "the facts presented by the Taxpayers would appear to warrant an abatement," it denied the taxpayers' request. Their motion for rehearing was denied, and this appeal followed.

■ In an abatement case, the taxpayer has the burden of proving by a preponderance of the evidence that the property at issue was assessed disproportionately to other property in the town. *Stevens v. City of Lebanon*, 122 N.H. 29, 32, 440 A.2d 451, 453 (1982). Here the taxpayers did not argue that their property was assessed at a higher percentage of fair market value than the percentage at which other property was generally assessed in the town. *See Appeal of Town of Sunapee*, 126 N.H. 214, 217, 489 A.2d 153, 155 (1985). Rather they argued that the fair market value that the town placed on their property was inappropriate, based on the absence of certificates of occupancy. The board agreed, questioning whether it would "be appropriate to reduce the assessments because of the problems in marketing these to individuals [without certificates of occupancy]" and ruling that the facts appeared to warrant an abatement. Having ruled that an abatement may have been warranted, however, the board denied the taxpayers' requests on the ground that the taxpayers failed to carry their burden of proving the appropriate fair market values for their property.

The narrow issue for our review is whether the board, after hearing all the evidence, was required to determine the fair market value of the property subject to the abatement proceeding.

Pursuant to RSA 76:16-a (1991), taxpayers aggrieved by a decision of the town regarding a requested tax abatement may appeal to the board, as the taxpayers here chose to do. The statute states that "the board of land and tax appeals . . . after inquiry and investigation . . . shall make such order thereon as justice requires." RSA 76:16-a, I. To facilitate the board's task, RSA 71-B:14 (1991) provides: "The board shall have upon its staff 2 review appraisers who shall be classified state employees and who shall be competent to review the value of property for tax purposes."

■ On appeal, the taxpayers must prove that the board's ruling was "clearly unreasonable or unlawful." RSA 541:13 (1974). We hold that the taxpayers have met their burden.

After marking the taxpayers' appeal "[r]eady to appraise," the board assigned an appraiser to look at the property. According to the board chairman, the appraiser "didn't file a great report." Consequently, the chairman stated that the appraiser might be dispatched a second time to "take a look and run some numbers to see what value he would put on them, given these defects," and explained that he would provide all parties with a copy of the appraiser's report and, we presume, allow them an opportunity to rebut the report. The

appraiser, the chairman pointed out, had been involved with appraising property in Conway since "way back when."

At the hearing, the taxpayers presented evidence of construction costs (which the town's attorney found "reasonable"), rents, vacancies, condominium fees, and expenses. As noted above, the board undertook its own investigation in this case, *see* RSA 71-B:5, I (1991), relying on an experienced appraiser who was familiar with the area. Under the unusual circumstances of this case, where the taxpayers proved disproportionate assessment; where the board apparently rejected the report of its own appraiser; and where the board indicated that a second appraisal would likely be necessary, but the board's records do not reflect that a further appraisal was ever conducted, it was unreasonable for the board to rule that the "lack of information" on valuation precluded its ability to grant the taxpayers' requested abatements. Accordingly, we reverse and remand.

*Reversed and remanded.*

All concurred.