Grafton
No. 80-293

THOMAS S. STEVENS

v.

CITY OF LEBANON

January 20, 1982

*Lawrence A. Kelly*, of Lebanon, by brief and orally, for the plaintiff.

*Decato and Cirone P.A.*, of Lebanon (*R. Peter Decato* on the brief and orally), for the defendant.

KING, C.J. The plaintiff, Thomas S. Stevens, sought an abatement of taxes assessed, as of April 1, 1978, on his real property located in Lebanon, New Hampshire. The abatement was granted by the trial court. We affirm.

There were two issues presented at a trial before a Master (*Thomas M. Pancoast*, Esq.). One issue was whether the City of Lebanon had overstated the market value of the plaintiff's property. Except for a slight adjustment of this value, the master found for the city. The second issue was whether the city had applied an excessively high proportionality factor to the market value of the property. The master found for the plaintiff, and his findings were approved by the Superior Court (*Johnson*, J.). After the trial court denied its motion for reconsideration, the city appealed the second issue to this court.

The last general reassessment of real estate taxes in the City of

Lebanon occurred in 1972, at which time all property was assessed at 100% of fair market value. As time passed, the fair market value of property in the city increased, but the assessed value did not change. Therefore, the assessment represented a progressively smaller percentage of fair market value. In order to insure that new assessments are in line with old assessments, the city must use some method by which the assessments of value can be equalized.

The New Hampshire Department of Revenue Administration is responsible for compiling equalization ratios for all of the cities and towns in this State. The department surveys property sales in a given municipality, obtains assessment figures, and makes necessary adjustments to determine an equalization factor which, when multiplied by current fair market values, will produce an assessment in line with existing assessments. Generally, the equalization factors do not include industrial or commercial properties. Any municipality is free to accept or reject the equalization ratio.

In March of 1978, the plaintiff purchased the Owl's Nest Restaurant in Lebanon, New Hampshire, including the building in which the restaurant was located and the land around it. Prior to the sale, the property had undergone extensive renovations, and the city had assessed the property after the renovations at $200,000 for the building and $25,800 for the land. The assessment on the land is not at issue.

The city used the "Marshall-Swift" method for computing reproduction costs and then adjusted the figure by subtracting depreciation. *See Bartage, Inc. v. Manchester Housing Auth.*, 114 N.H. 203, 205, 318 A.2d 152, 154 (1974). The "Marshall-Swift" method does not require the additional step of applying an equalization ratio for determining an assessed value.

The plaintiff timely petitioned the city for an abatement of taxes as assessed on April 1, 1978. Because the worksheets needed to compute the assessment under the "Marshall-Swift" method were no longer available, the city recomputed the assessment using both the "Dodge" and "Means" systems for computing fair market value. Both systems employ a reproduction cost less depreciation method for determining fair market value. However, both of these systems require in addition that the fair market value be multiplied by an equalization factor to compute the assessed value.

The department of revenue administration computed a 72% equalization ratio for the City of Lebanon as of April 1, 1976, but reduced the ratio to 64%, effective April 1, 1978. When recomputing the plaintiff's assessment as of April 1, 1978, the city used the available 72% equalization factor and not the later-calculated 64% factor.

The "Dodge" system, using the 72% equalization factor, gave an assessment of $197,530; and the "Means" system, using the 72% factor, gave an assessment of $205,185. Because these two figures were so close to the original $200,000 assessment, the city concluded that the $200,000 assessment was correct and denied the plaintiff's petition for abatement. The plaintiff appealed the city's decision to the superior court.

After trial, the master concluded that use of the 72% equalization factor effectively added two years of appreciation to the assessment of the plaintiff's property which was not added to most of the assessments in the City of Lebanon. Consequently, the master recalculated the assessment by applying the 64% factor to the average fair market value as determined by the "Dodge" and "Means" systems. Then the master applied the tax rate to the new assessment and concluded that the tax due should have been $7,998.12. Under protest, the plaintiff had already paid the originally assessed taxes of $9,528.76. Therefore, the master ordered the city to pay the difference of $1,530.64 and interest to the plaintiff. *See* RSA 76:17-a.

 It is well settled that the test in an abatement case is whether the taxpayer is paying more than his proportional share of taxes. *Milford Props., Inc. v. Town of Milford*, 119 N.H. 165, 167, 400 A.2d 41, 42 (1979). A plaintiff has the burden of proving the disproportion by a preponderance of the evidence. *Id.* at 167, 400 A.2d at 42; *Berthiaume v. City of Nashua*, 118 N.H. 646, 647, 392 A.2d 143, 144 (1978). The disproportion proved need not be disproportion with respect to similarly used property, but rather only with respect to "other property in general." *Id.* at 649, 392 A.2d at 145.

After hearing testimony from the city's chief assessor and the representative of the department of revenue administration, the master found that the plaintiff's tax burden was greater than that of most other property owners in the City of Lebanon.

██ The city relies on *Milford Props., Inc. v. Town of Milford*, 120 N.H. 581, 419 A.2d 1093 (1980) and *Milford Props., Inc. v. Town of Milford*, 119 N.H. 165, 400 A.2d 41 (1979). Those cases stand for the general proposition that in an abatement proceeding, the trial court must consider the State's equalization ratio on the issue of disproportionality. *Milford Props., Inc. v. Town of Milford*, 119 N.H. at 167, 400 A.2d at 43. *See Snow v. City of Rochester*, 119 N.H. 181, 183, 399 A.2d 972, 973 (1979). The State equalization ratio, however, standing by itself, is not sufficient to carry the

plaintiff's burden to demonstrate that his property taxes are greater than those on other property in general. *Milford Props., Inc. v. Town of Milford*, 120 N.H. at 583, 419 A.2d at 1094; *Milford Props., Inc. v. Town of Milford*, 119 N.H. at 167, 400 A.2d at 43. If the municipality does not stipulate to the validity of the State ratio or otherwise indicate its acceptance of the accuracy by actual use, the plaintiff must introduce further proof of disproportionality. *Milford Props., Inc. v. Town of Milford*, 120 N.H. at 582–83, 419 A.2d at 1094; *Milford Props., Inc. v. Town of Milford*, 119 N.H. at 167–68, 400 A.2d at 43. The plaintiff may introduce statistical evidence supporting the State equalization ratio or produce a proportionality study by an independent expert which is based on a survey of a fair cross section of property in the municipality where the plaintiff's property is located. *Milford Props., Inc. v. Town of Milford*, 120 N.H. at 583–84, 419 A.2d at 1094; *Milford Props., Inc. v. Town of Milford*, 119 N.H. at 168, 400 A.2d at 43.

Here, there were substantial renovations to the plaintiff's property which caused the city to reassess it at a time when the city was not generally reassessing property. The city itself employed a State equalization ratio in order to bring the true market value into line with other property which had not been recently assessed. The use of a State equalization ratio by the city is indicative of the city's acceptance of the accuracy and correctness of the State's equalization ratios. *See Milford Props., Inc. v. Town of Milford*, 120 N.H. at 582–83, 419 A.2d at 1094. We hold that once having chosen to employ an equalization ratio determined by the department of revenue administration, the city was obligated to use the proper equalization ratio.

The city argues that, in using the 72% equalization ratio, it treated other taxpayers in the same manner in which it treated the plaintiff and that, therefore, the plaintiff should not be entitled to complain of that treatment. As indicated by the master, the fact "that some other taxpayers may have been affected by this error, but declined to exercise their rights of appeal, cannot prejudice this plaintiff, who did, in fact, exercise and pursue vigorously his rights of appeal."

The city presents the policy argument that every property owner may seek to take advantage of late property surveys done by the State by filing appeals and waiting to see if the State's survey changes the equalization ratio that was used as of the previous April, which will serve to create speculation with respect to assessments. Whether this is so or not is a pragmatic matter that must be dealt with on an administrative level. The city could have

kept its equalization method on an ongoing basis or adopted another system for equalizing assessment, or could have adjusted the plaintiff's bill once the proper State equalization ratio became known.

■ The finding that the use of the old equalization ratio of 72% added two years' appreciation not added to other assessments, resulting in a disproportionate assessment to the plaintiff's property, is supported by sufficient evidence and is upheld. *Wise Shoe Co. v. Town of Exeter,* 119 N.H. 700, 702, 406 A.2d 720, 722 (1979). The plaintiff has met his burden of proof. *See Berthiaume v. City of Nashua,* 118 N.H. at 647, 392 A.2d at 144.

*Affirmed.*

All concurred.