Board of Tax and Land Appeals
No. 83-530

APPEAL OF TOWN OF SUNAPEE
(New Hampshire Board of Tax and Land Appeals)

March 7, 1985

*Hall, Morse, Gallagher & Anderson,* of Concord (*Charles T. Gallagher* on the brief, and *G. Wells Anderson* orally), for Robert L. and Margaret Wildman.

*Sulloway, Hollis & Soden,* of Concord (*Eleanor H. Holmes* on the brief and orally), for the Town of Sunapee.

SOUTER, J. This is an appeal under RSA 541:6 and RSA 76:16-a, V (Supp. 1983) from a decision of the New Hampshire Board of Tax and Land Appeals ordering abatement of taxes on two lots, one with a house and one vacant. The town excepts to the order as to the house lot, because the taxpayers never applied to the town's selectmen for abatement of the tax on that lot. The town also excepts to the order generally, on the ground that the taxpayers did not offer sufficient evidence of disproportionate assessment. We reverse the order of abatement on the house lot, but affirm the order on the vacant lot.

In the 1982 tax year the taxpayers owned two adjoining lots in Sunapee. There was a house on one lot; the other was vacant. Each

lot carried the assessment set in 1976: $169,590 on the house lot and $17,400 on the vacant one. After the taxpayers learned from the New Hampshire Water Supply and Pollution Control Commission that they could not lawfully subdivide or develop the vacant lot, they applied to the selectmen for an abatement of taxes on that lot, to reflect lower assessments generally placed on parcels that could not be developed. *See* RSA 76:16. They sought no abatement of taxes on the house lot. The selectmen refused to grant the abatement on the vacant lot.

The taxpayers appealed to the State Board of Tax and Land Appeals under RSA 76:16-a (Supp. 1983). Although the notice of appeal referred specifically to the assessment on the vacant lot, it also requested a reduction of the assessment placed on "all" of the taxpayers' property. It did not, however, state that the taxpayers had sought an abatement from the selectmen on the vacant lot alone. The notice contained an indication that a copy was sent to the town.

The board acknowledged receipt of the appeal papers with a form apparently sent in duplicate to the taxpayers and the town. The form did not specifically identify the property subject to the appeal, but did request information from the town, including the assessed value of "each piece of property" that the taxpayers owned. After an evidentiary hearing, the board reduced the assessments on the lots to $142,100 and $14,500, respectively, and ordered abatements accordingly.

 In appealing to this court, the town first claims that the board erred in ordering a reduction in assessment and an abatement as to the house lot. We agree. The powers of the board and the rights of taxpayers appearing before the board are entirely statutory and are limited by the terms of the statute. *Thayer v. State Tax Comm'n*, 113 N.H. 113, 114, 302 A.2d 824, 825 (1973). Under RSA 76:16-a, I (Supp. 1983) a taxpayer is authorized to seek relief from the board only "[i]f the selectmen neglect or refuse to . . . abate." The subject matter jurisdiction of the board is thus limited to the subject of the selectmen's refusal or neglect. Selectmen can be said to neglect or refuse only what a taxpayer has first requested. Hence, the jurisdiction of the board is limited to the subject of a taxpayer's original request to the selectmen. It is a truly appellate jurisdiction. *See McCann v. Silva*, 455 F. Supp. 540 (D.N.H. 1978). Since the taxpayers did not ask the selectmen to abate taxes on the house lot, the board can order no abatement as to that lot.

The taxpayers seek to avoid this result by arguing that, by requesting assessments on each lot of the taxpayers' land, the board put the town on notice that abatements of taxes on all lots would be

in issue. On this theory, the town is supposed to have had notice of the scope of the proceeding, as required by RSA 76:16-a, II (Supp. 1983), so that it may fairly be subjected to the broader order of abatement.

■ This argument fails for two reasons. First, it assumes that an administrative tribunal's statutory jurisdiction may somehow be enlarged beyond the terms of the statute. It may not be. *Thayer v. State Tax Comm'n supra.*

■ Second, the taxpayers' argument assumes that the board's request to the selectmen for assessments on all lots would, as a matter of fact, put the town on notice that abatements on all lots would be considered. This might be true if the board would have no other reason to consider assessments on lots not originally subject to dispute with the selectmen. This, however, is not so. When a taxpayer challenges an assessment on a given parcel of land, the board must consider assessments on any other of the taxpayer's properties, for a taxpayer is not entitled to an abatement on any given parcel unless the aggregate valuation placed on all of his property is unfavorably disproportionate to the assessment of property generally in the town. *Bemis &c. Bag Co. v. Claremont*, 98 N.H. 446, 449, 102 A.2d 512, 516 (1954). "Justice does not require the correction of errors of valuation whose joint effect is not injurious to the appellant." *Amoskeag Mfg. Co. v. Manchester*, 70 N.H. 200, 205, 46 A. 470, 473 (1899) (citations omitted).

When a taxpayer owns two parcels, then, a request for abatement on the first will always require consideration of the assessment on the second. The mere inquiry into the assessment on the second was not, therefore, any indication that an abatement might be granted as to that lot.

The town's further assignment of error is that the record is insufficient to support any finding of disproportionate assessment, even as to the vacant lot. We find, on the contrary, that the record does support the board's conclusion that the two lots were assessed disproportionately to other property in the town.

■■ A taxpayer has the burden to prove such disproportionality. *Milford Props., Inc. v. Town of Milford*, 119 N.H. 165, 166–67, 400 A.2d 41, 42 (1979). To carry this burden, he must establish that his property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the town. *Berthiaume v. City of Nashua*, 118 N.H. 646, 647, 392 A.2d 143, 144 (1978).

██ The burden to prove the general level of assessment in the town can be difficult to carry. For example, evidence that a town's appraiser intended to assess all property at 100% of fair market value is insufficient to satisfy the taxpayer's burden. *See Bedford Development Co. v. Town of Bedford,* 122 N.H. 187, 442 A.2d 590 (1982). Likewise, evidence of the general level of assessment in the form of the equalization ratio for the town as calculated by the department of revenue administration "is not sufficient to carry the [taxpayer's] burden . . . . If the municipality does not stipulate to the validity of the State ratio or otherwise indicate its acceptance of the accuracy by actual use, the [taxpayer] must introduce further proof . . ." of the general level of assessment. *Stevens v. City of Lebanon,* 122 N.H. 29, 32–33, 440 A.2d 451, 453–54 (1982) (citations omitted). *See* RSA 71-A:11, XII (Supp. 1983); RSA 76:1 (Supp. 1983).

██ When, however, there is uncontroverted evidence that the town did use the State's ratio in the assessment process for the tax year in question, the town cannot deny the validity of the ratio, and evidence of that ratio satisfies the taxpayer's burden to prove the general level of assessment. *Milford Props., Inc. v. Town of Milford,* 120 N.H. 581, 582–83, 419 A.2d 1093, 1094 (1980). Such was the case here.

It was undisputed before the board that in 1982 the town generally assessed property at 58% of fair market value in accordance with the ratio set by the department of revenue administration. It was also undisputed that the town used that same ratio when assessing new or improved lots for purposes of taxation that year. Under the holding in *Milford,* this was enough to sustain the taxpayers' burden to establish the level of assessment generally in the town.

The town nonetheless claims that its use of the State equalization ratio does not bind it to accept that ratio for all purposes, despite the rule in *Milford.* It states that it applied the ratio only when it reassessed parcels that had been subdivided or improved since the time of a general reassessment in 1976. The town therefore argues that it should be bound to apply that ratio only to property in the same category, that is, property that had been subdivided or improved since 1976.

In essence, the town argues that the board should have segregated property into two categories, property untouched since 1976 and all other property. The town would then allow comparisons to be made only between properties within one or the other category for purposes of testing proportionality. The town argues that if this method were followed, the lot in question would be found to have been assessed at the same percentage of fair market value as other lots that had been untouched since 1976.

██ ██ This argument ignores the settled law that a town is obligated to assess all lots of land at the same percentage of fair market value. *Amoskeag Mfg. Co. v. Manchester*, 70 N.H. 200, 206, 46 A. 470, 473 (1899). It is impermissible to maintain a class of real estate that is assessed at a higher level than other real estate, whether that class consists of one parcel or half the town. It is therefore irrelevant that all assessments within one such class may be uniform. Widespread disproportionality is no defense. The same obligation of uniform assessment explains why an appealing taxpayer is not required to prove that his land was valued higher than other supposedly similar land. If he can prove that it was valued at a higher level than the level generally prevailing, he is entitled to relief. *Stevens v. City of Lebanon*, 122 N.H. 29, 32, 440 A.2d 451, 453 (1982).

Since we find that the board correctly found that the taxpayer had established the general level of assessment at 58% of fair market value, we need only note that the board correctly applied that finding in the following manner. It found that the fair market value of both lots in 1982 was $270,000. The board allocated that total as between the two lots at the same relative proportions used by the town in allocating its own total valuation. This resulted in attributing 9.3% of the total, or $25,110, to the vacant lot. The board then determined that 58% of that amount was approximately $14,500, as against the $17,400 assessment. The board accordingly reduced the assessment on the vacant lot by the $2,900 difference and ordered an abatement of tax based on that reduction.

> *Reversed as to the house lot;*
> *affirmed as to the vacant lot;*
> *remanded.*

BATCHELDER, J., did not sit; the others concurred.