Board of Tax and Land Appeals
No. 92-602

APPEAL OF CITY OF NASHUA
(New Hampshire Board of Tax and Land Appeals)

March 3, 1994

262

*Gottesman and Hollis, P.A.*, of Nashua (*Morgan A. Hollis* on the brief and orally), for the plaintiffs, Birch Pond Office Park Associates and New England Mutual Life Insurance Company.

*Mark J. Bennett*, corporation counsel, of Nashua, by brief and orally, for the City of Nashua.

THAYER, J. The City of Nashua appeals a decision of the New Hampshire Board of Tax and Land Appeals (board) granting property tax abatements to the plaintiffs. We affirm.

At issue is a three-story, 71,000 square foot office building located on approximately six acres of land in Nashua. Plaintiff Birch Pond Office Park Associates owned the property during the tax years 1988 and 1989, while plaintiff New England Mutual Life Insurance Company owned the property by deed in lieu of foreclosure during tax year 1990. The plaintiffs appealed to the board for an abatement for those three tax years, alleging that the city's assessments had been disproportionately high. The board agreed, finding that the city had overassessed the property by approximately $1.33 million for 1988, $1.55 million for 1989, and $1.57 million for 1990. The board ordered the city to refund taxes paid on the overassessed portions of the city's assessments.

On appeal, the city argues that the board: (1) erred by making findings of fact based on information outside the scope of evidence presented at the hearing and not capable of being judicially noticed; (2) violated RSA 541-A:18, V(b) (Supp. 1993) by making findings based on extraneous evidence without providing the city with notice that it intended to rely on the extraneous evidence; and (3) misapplied the burden of proof standard set forth in *Appeal of Town of Sunapee*, 126 N.H. 214, 489 A.2d 153 (1985), by failing to require the plaintiffs to produce evidence on the validity of the equalization ratio computed by the New Hampshire Department of Revenue Administration (department).

In order to determine the appropriate assessed value for a property, the board must make specific findings regarding the property's market value and the equalization ratio by which to discount the market value to an assessed value. *See Appeal of Loudon Road Realty Trust*, 128 N.H. 624, 626–27, 517 A.2d 843, 845 (1986). "Findings of fact by the board are final and our review is limited to questions of law." *Appeal of Andrews*, 136 N.H. 61, 64, 611 A.2d 632, 634 (1992); *see also* RSA 76:16-a, V (1991). Nevertheless, when the board structures its decision solely by summarizing evidence presented by the contending parties and describing the parties' opposing views, without making specific factual findings in support of its own conclusions, *see Appeal of Loudon Road Realty Trust*, 128 N.H. at 626, 517 A.2d at 845, it fails to meet its statutory obligation to make "a concise and explicit statement of the underlying facts supporting [its] findings," RSA 541-A:20 (Supp. 1993); *see also Appeal of Portsmouth Trust Co.*, 120 N.H. 753, 759, 423 A.2d 603, 607 (1980), and its order

will therefore be vacated and remanded for a new hearing. *See, e.g.,* *Appeal of Loudon Road Realty Trust,* 128 N.H. at 627, 517 A.2d at 845.

The city's two initial contentions are related. First, the city contends that, although the board's decision does contain findings of fact necessary for the computation of income-based market value, including determinations of market rents, vacancy rates, and capitalization rates, the board erred by failing to detail explicitly the evidence it used in making its determinations. Further, the city argues, to the extent that the board relied on evidence outside the record in making its findings, such reliance constitutes "official notice" of "technical or scientific facts within the agency's specialized knowledge," RSA 541-A:18, V(a)(3) (Supp. 1993), which, if true, would require the board to notify the parties of the material noticed, and to provide the parties with information they might need in order to contest the board's findings. RSA 541-A:18, V(b).

Our review of the board's decision, however, reveals a thorough, well-documented analysis that does not comport with the city's assertions. The board's analysis of the information presented by the parties can in no way be characterized as a conclusory summary of the evidence, *see Appeal of Loudon Road Realty Trust,* 128 N.H. at 626–27, 517 A.2d at 845, nor do the board's findings appear to have derived from facts outside the record. In its decision, the board specifically identified strengths and weaknesses in the evidence, and it connected the evidence presented to its findings in every instance.

For example, on the issue of market rents, the board specifically rejected the city's rental data, which included space for tenants such as Pizza Hut, finding that such data was not comparable to the plaintiffs' situation. The board noted that "[t]he leases relied upon by the City appear in most cases to have been commenced in a better market preceding the years under appeal." Citing the evidence and its own specialized knowledge, the board then found that the city's rental figures of $15.00 per square foot for 1988 and 1989 and $14.50 per square foot in 1990 were too high by $.50 per square foot in 1988, $1.00 in 1989, and $1.00 in 1990.

Similarly, in determining capitalization rates, the board evaluated the evidence before it and made a reasoned finding of 9.5 percent, a figure between the rates proposed by the two parties. The board explained that the city's direct capitalization rate of seven percent was too low because "it was based upon unverified income data and [did] not reasonably consider the equity, mortgage and tax commitments that have to be fulfilled by the net operating income of the

Property." The board also rejected the plaintiffs' capitalization rates as too high, citing the "general market conditions" for 1989 and 1990.

■ We hold that the board was not required to elaborate further about the exact derivation of its findings. The board's explanations in support of its factual findings satisfied the requirement that it "include specific, although not excessively detailed, basic findings in support of [its] ultimate conclusions." *Appeal of Portsmouth Trust Co.*, 120 N.H. at 759, 423 A.2d at 607; *see also* RSA 541-A:20.

■■ We also reject the city's assertion that the board used extraneous evidence to arrive at its conclusions. That the board's findings often represented a middle ground between the city's and plaintiffs' proposed figures does not necessarily suggest that those findings had to have derived from an external, factual source. In arriving at findings of fact that do not exactly correspond to either party's evidence, but are within the parameters of the conflicting evidence submitted, the board merely employs its statutorily countenanced ability to utilize its "experience, technical competence and specialized knowledge" in evaluating the evidence before it. *See* RSA 541-A:18, V(b). Because we hold that the board did not rely on extraneous evidence in making its findings, the board committed no error by failing to take "official notice" of facts within its specialized knowledge or to provide corresponding notification to the parties. *See* RSA 541-A:18, V(a)(3), (b).

■ Finally we turn to the issue of whether the board erred by failing to require the plaintiffs to produce evidence on the validity of the department's equalization ratio. "It is well settled that the test in an abatement case is whether the taxpayer is paying more than his [or her] proportional share of taxes." *Stevens v. City of Lebanon*, 122 N.H. 29, 32, 440 A.2d 451, 453 (1982). The plaintiffs have the burden of proving disproportionality with respect to other property in the city by a preponderance of the evidence. *Appeal of Andrews*, 136 N.H. at 64, 611 A.2d at 634; *Stevens*, 122 N.H. at 32, 440 A.2d at 453. To establish disproportionality, the plaintiffs must show that their assessment is higher than the general level of assessment in the city. *Appeal of Town of Sunapee*, 126 N.H. at 217, 489 A.2d at 155. We have held that the plaintiffs' burden to prove the general level of assessment is difficult, and may be met by evidence of the department's equalization ratio for the city only if the city has stipulated to the validity of, or actually uses, that particular equalization ratio when it assesses property. *Id.* at 218, 489 A.2d at 155–56; *see also Appeal of Andrews*, 136 N.H. at 64, 611 A.2d at 634.

In the present case, the difficulty of the plaintiffs' burden was unduly magnified because the city chose not to stipulate to the use of *any* equalization ratio in its property assessments. Lacking any evidence of the equalization ratios actually used by the city during the relevant tax years, the plaintiffs were compelled to urge the board to adopt the department's equalization ratios for those years. The city countered that the department's ratios did not accurately reflect the general level of assessment. The city, however, did not disclose to the board what the appropriate equalization ratios should be or how its ratios would be any different than the department's ratios. Under a strict interpretation of *Sunapee*, the city's categorical rejection of the department's ratios would have forced the plaintiffs to "introduce further proof of the general level of assessment." 126 N.H. at 218, 489 A.2d at 155 (quotation omitted). Presumably, such further proof would have necessitated an expensive duplication of the department's equalization ratio studies for each of the relevant tax years.

The plaintiffs' burden of proving the general level of assessment, however, does not relieve the city of its preexisting obligation to "use *some* method to equalize tax assessments to insure proportionality." *Appeal of Andrews*, 136 N.H. at 63, 611 A.2d at 633 (emphasis added). If a municipality does not use a uniform equalization ratio to ensure proportional assessments, it will have violated its obligation to appraise property fairly for taxation purposes. *See* RSA 75:1, :8 (1991). "[O]ur constitution mandates that all taxpayers in a town be assessed at the same proportion of [fair market value]." *Public Serv. Co. of N.H. v. Town of Seabrook*, 133 N.H. 365, 377, 580 A.2d 702, 709 (1990).

We hold that in tax abatement cases before the board, a municipality must disclose its preferred equalization ratio. If it employs its own uniform ratio to discount properties' fair market values to assessed values, a municipality must make a good faith offering of this ratio, as well as the methodology by which it computed the ratio. *Cf. Appeal of Andrews*, 136 N.H. at 65, 611 A.2d at 634–35 (town entitled to use its own calculation of a "median" ratio, provided that town granted all abatements to that ratio). The plaintiffs, then, may offer proof that another ratio, perhaps the department's ratio, more closely reflects the general level of assessment. *Cf. Poorvu v. City of Nashua*, 118 N.H. 632, 634, 392 A.2d 138, 139 (1978) (sale prices and assessed values of comparable properties provide some evidence of disproportionate assessment). In the event of a disparity, the board, in its role as finder of fact, RSA 76:16-a, V (1991), shall determine the

equalization ratio most reasonably representative of the general level of assessment.

██ Where, as here, the city does not offer an alternative to the department's ratios for the relevant tax years, the plaintiffs' offering of the department's ratios shall satisfy their burden to prove the general level of assessment. Our clarification of the burden of proof today does not penalize the city. At the hearing, the city admitted to the board that if it had computed its own ratios, those ratios would not have differed significantly from the department's ratios. Thus, the board's finding that the department's ratios reasonably represented the general level of assessment within the city is not erroneous as a matter of law.

*Affirmed.*

All concurred.