NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Board of Tax and Land Appeals
No. 2020-0474


APPEAL OF CITY OF BERLIN
(New Hampshire Board of Tax and Land Appeals)

Argued: June 22, 2021
Opinion Issued: January 12, 2022


Donahue, Tucker & Ciandella, PLLC, of Meredith (Christopher L. Boldt, Eric A. Maher, and Brendan A. O'Donnell on the brief, and Christopher L. Boldt orally), for the petitioner.


Sulloway & Hollis, P.L.L.C., of Concord (Margaret H. Nelson, Derek D. Lick, and Trevor J. Brown on the brief, and Derek D. Lick orally), for the respondent.


BASSETT, J. The petitioner, City of Berlin (City), appeals an order of the New Hampshire Board of Tax and Land Appeals (BTLA) determining that the City over-assessed the respondent, Public Service Company of New Hampshire d/b/a Eversource Energy (PSNH), for tax year 2017. The City challenges the BTLA's decision to apply the New Hampshire Department of Revenue Administration (DRA) 2017 median equalization ratio to determine the proportionality of the City's assessment of PSNH's J. Brodie Smith hydroelectric facility (Smith Hydro). It argues that the 2016 median

equalization ratio — the most recent DRA ratio available at the time the City prepared the 2017 tax assessment — should apply. Because we agree, we reverse and remand.

The following facts are supported by the record or are otherwise undisputed. In February 2018, PSNH applied for an abatement from the City for property taxes assessed as of April 1, 2017 on 15 properties it owned in Berlin, including Smith Hydro. The City had appraised PSNH's property in the aggregate sum of $99,763,300 and assessed a tax of $3,659,317. PSNH asserted, among other things, that the City's assessment "substantially exceed[ed]" the properties' fair market value and was "disproportional." See RSA 76:16 (Supp. 2021). The City's Board of Assessors denied the request for an abatement, and PSNH appealed to the BTLA. See RSA 76:16-a, I (Supp. 2021).

PSNH's appeal to the BTLA included the same 15 properties it had identified in its abatement application. Its stated reasons for the appeal included that the City's assessment "fail[ed] to reflect changes in the energy market and their impact on the market value of Smith Station." In addition, PSNH stated that applying the DRA 2017 median equalization ratio to the City's assessment of $99,763,300 indicated a fair market value for its property of approximately $103,704,054. That amount, PSNH asserted, was substantially greater than the "full and true value" of its property, thereby resulting in an "excessive" assessment and a "disproportionate burden."

PSNH's appeal was subsequently consolidated with 137 other tax abatement appeals filed by PSNH challenging the proportionality of assessments on property it owned in 47 municipalities during tax years 2014-2017. By the time the BTLA held a hearing on the consolidated appeals, the only PSNH property at issue in Berlin was Smith Hydro, which also was the only hydroelectric generating facility involved in the appeals. The parties agreed that Smith Hydro's highest and best use was as a merchant generating plant operating in the deregulated marketplace, but disagreed as to the market value of the property, and as to the equalization ratio that should be applied in the proportionality analysis.

As to the valuation issue, PSNH's expert testified that the fair market value of Smith Hydro was $34 million, while the City's experts testified that its valuation was $49 million. The BTLA found that the City's valuation was "more credible and better supported by the record as a whole and [PSNH] did not meet its burden of proving otherwise." PSNH does not appeal that finding.

As to the issue on appeal, the parties disagreed as to the proper DRA median equalization ratio to be applied in determining the general level of assessment for tax year 2017 in Berlin. Prior to the hearing on the merits, PSNH filed a motion requesting that the BTLA adopt the DRA 2017 ratio "as

2

evidence of the proportional level of assessment." The City objected, arguing that it "did not use the DRA's 2017 median equalization ratios when setting its 2017 assessments and tax rate." It asserted that "[t]he general level of assessment in a municipality is a triable issue of fact, which [PSNH] bears the burden of proving at trial," and, therefore, the BTLA should reject PSNH's "pre-trial request to adopt a certain assessment level." The BTLA did not rule on the motion at that time.

On the first day of the hearing, PSNH offered an exhibit showing the DRA 2017 median equalization ratio for Berlin. PSNH asserted that the BTLA should take administrative notice of the DRA 2017 ratio and use that ratio for resolving its appeal involving Smith Hydro. Although acknowledging that it bore the burden of proving the general level of assessment for property in Berlin for tax year 2017, PSNH argued that the exhibit established that it had "made a good prima facie showing that the ratio should be the median equalization ratio set by the [DRA]," and, therefore, the burden shifted to the City to present evidence "that would warrant use of another ratio." The City objected, explaining that because the 2017 median equalization ratio was not established by the DRA until 2018, the City calculated the tax rate for the 2017 tax year utilizing the 2016 median equalization ratio. Therefore, the City asserted, the proper equalization ratio was "the median equalization ratio certified by DRA for 2016," which was "the equalization ratio that every other taxpayer in [Berlin] was subject to" for the 2017 tax year. After the BTLA acknowledged that the exhibit simply reflected what the DRA 2017 median equalization ratio was — but did not establish whether that ratio should be used for the purpose of resolving PSNH's appeal — the City agreed to its admission.

On the seventh day of the hearing, before the City began to present its case, the BTLA announced that it was granting PSNH's pre-trial motion to adopt the DRA 2017 median equalization ratio, concluding that it was "proper to apply the DRA's median ratio for the intended tax year 2017 instead of the prior tax year, 2016." The City again objected, asserting that the taxes assessed for the 2017 tax year "were paid based on [the DRA 2016 equalization ratio], not on the after-the-fact determination," and that the BTLA's decision was, therefore, "as a matter of equity, not correct."

During the BTLA proceedings, the City explained the process that it uses to determine property values and ensure that assessments are reasonably proportional and satisfy the requirements of state law. As the City noted, every municipality in the State is required to perform a revaluation of all property "at least as often as every fifth year." See RSA 75:8-a (2012); N.H. CONST. pt. II, art. 6. The City represented that property values are generally carried forward from year to year until the next revaluation; however, each year the City is required to adjust assessments for any properties that have had a material physical change or undergone other changes affecting value. See RSA 75:8

3

(2012). As the City's expert explained, because there are often year-to-year changes to utility property that affect its value, the City generally revalues utility property annually. To ensure that the assessment for such property is proportional to the valuations for other property in Berlin, the City equalizes the fair market value using the most recent DRA equalization ratio, and assesses the property at that equalized value.

Prior to September 1 of each year, the City must determine and submit the assessed value of all property in Berlin to the DRA. See RSA 21-J:34, I (2020). In so doing, the City's assessors apply the most recent equalization ratio, which is the equalization ratio published by the DRA earlier in the same year. See RSA 21-J:3, XIII (Supp. 2021). For the 2017 tax year, as of September 1, the current median equalization ratio was the 2016 median equalization ratio published by the DRA in early 2017.

Accordingly, prior to September 1, when setting the assessed value of Smith Hydro for the 2017 tax year, the City applied the then-current DRA 2016 equalization ratio of 110.7% to the adjusted fair market value of the facility. The City likewise applied the DRA 2016 equalization ratio of 110.7% in setting the assessed value of any other property that was subject to revaluation for the 2017 tax year. It was not until the spring of 2018 that the DRA announced that the 2017 median equalization ratio for Berlin was 96.2%.

In a written decision issued following the hearing, the BTLA reiterated its position that, under "established law," proportionality required application of the current tax year's median equalization ratio, not the prior tax year's ratio. The BTLA reasoned that "[i]t is one thing to question what statistic best measures the level of assessment (median ratio or weighted mean, for example), but quite another to require a party to prove what should be obvious (i.e., that a current year statistic is more valid than a prior year statistic)." The BTLA found the decisions of Appeal of City of Nashua, 138 N.H. 261 (1994), Appeal of Andrews, 136 N.H. 61 (1992), and one of its own administrative decisions issued in 2007, "dispositive" on this issue, and concluded that Berlin's arguments to the contrary were "without merit." Accordingly, the BTLA applied the DRA 2017 median equalization ratio of 96.2% to the City's $49 million market value estimate of Smith Hydro, resulting in "an abated assessment of $47.138 million." The City moved for rehearing, which the BTLA denied. This appeal followed.

On appeal, the City argues that the BTLA's decision to apply the DRA "after the fact" 2017 equalization ratio to determine the proportionality of the City's assessment of Smith Hydro was unlawful or unreasonable. The City asserts that a taxpayer "cannot carry its burden of proving the general level of assessment by solely relying upon one of the DRA equalization studies unless the municipality actually used that ratio or stipulated to the validity of that ratio." In addition, the City argues, PSNH submitted no evidence regarding

"whether or how it was proper to use" the DRA 2017 equalization ratio arrived at in May 2018 to prove the general level of assessment for tax year 2017, i.e., valuations as of April 1, 2017.

PSNH counters that the City's argument that PSNH failed to introduce any evidence to support the use of the DRA 2017 median equalization ratio "lacks merit both as a matter of fact and as a matter of law." PSNH asserts that it submitted sufficient evidence as to the proper equalization ratio to be used when it requested, prior to the hearing, that the BTLA take administrative notice of the DRA 2017 median equalization ratio and submitted an exhibit showing what that ratio was for Berlin. According to PSNH, under "the controlling legal standard," no more was required to meet its burden of establishing the proportional level of assessment than: (1) introducing evidence of the DRA 2017 median equalization ratio; (2) the City introducing evidence of the DRA 2016 median equalization ratio; and (3) the BTLA, "in its role as the finder of fact," concluding that the 2017 ratio should be applied. We disagree with PSNH that simply introducing a DRA equalization ratio that the City did not use was sufficient to carry its burden of proving the general level of assessment in Berlin for the 2017 tax year.

Our standard for reviewing BTLA decisions is established by statute. Appeal of Town of Chester, 174 N.H. 424, 426 (2021); see RSA 71-B:12 (2012); RSA 541:13 (2021). We will not set aside or vacate a BTLA decision except for errors of law, unless we are satisfied by a preponderance of the evidence that such order is unjust or unreasonable. Appeal of Town of Chester, 174 N.H. at 426; see RSA 541:13. The appealing party has the burden of demonstrating that the BTLA's decision was clearly unreasonable or unlawful. Appeal of Town of Chester, 174 N.H. at 426-27; see RSA 541:13. The BTLA's findings of fact are deemed prima facie lawful and reasonable. See RSA 541:13.

In a tax abatement appeal, the taxpayer bears the burden of proving by a preponderance of the evidence that it is paying more than its proportional share of taxes. Appeal of Pub. Serv. Co. of N.H., 170 N.H. 87, 93-94 (2017). To satisfy this burden, the taxpayer must show that its property is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the municipality. Id. at 94; see also Appeal of Andrews, 136 N.H. at 64-65. When resolving tax abatement appeals, the BTLA must make specific factual findings regarding the fair market value of the taxpayer's property and the general level of assessment for the municipality. See Appeal of City of Nashua, 138 N.H. at 263. We will uphold the BTLA's factual findings unless the evidence does not support them or they are erroneous as a matter of law. See Appeal of Pub. Serv. Co. of N.H., 170 N.H. at 94; see RSA 76:16-a, V (Supp. 2021) (providing that, on appeal from a BTLA tax abatement order, the BTLA's findings of fact "shall be final" and any appeal from the BTLA's decision "shall be limited to questions of law").

5

The general level of assessment for a given tax year represents the proportion of fair market value at which property in the municipality is generally assessed for tax purposes. Appeal of Town of Sunapee, 126 N.H. 214, 217 (1985). The taxpayer's burden of proving the general level of assessment in the municipality "can be difficult to carry." Id. at 218. In certain circumstances, the DRA equalization ratio may be used to meet the taxpayer's burden — such as when there is uncontroverted evidence that the municipality used the DRA ratio in the assessment process for the tax year in question. See id. However, if a municipality does not stipulate to the validity of the DRA's equalization ratio, or actually use that ratio, the taxpayer must introduce further proof of the general level of assessment. See Milford Props., Inc. v. Town of Milford, 120 N.H. 581, 583 (1980) (explaining that, in the absence of evidence of the equalization ratio used by the town, the taxpayer bore the burden of establishing the actual ratio of the assessed value to the fair market value of other properties in the town for the tax year at issue).

PSNH, like the BTLA, relies primarily upon Appeal of City of Nashua as controlling the outcome of this appeal. PSNH asserts that, in that decision, this court "laid out the process which governs in the event a municipality does not agree to stipulate to the use of a particular ratio." According to PSNH, we "recognize[d] that the BTLA has the ability and the authority to determine the equalization ratio most reasonably representative of the general level of assessment in a community for a given year." Therefore, PSNH contends, in this case, "the BTLA could properly conclude the 2017 median equalization ratio properly reflected the general level of assessment in Berlin in 2017 as opposed to the 2016 ratio." PSNH, however, posits an unduly broad reading of Appeal of City of Nashua.

In Appeal of City of Nashua, the city appealed the BTLA's decision granting property tax abatements for taxes assessed on an office building for tax years 1988, 1989, and 1990. Appeal of City of Nashua, 138 N.H. at 263. The city argued that the BTLA had misapplied the burden of proof standard set forth in Appeal of Town of Sunapee by failing to require the taxpayers to produce evidence on the validity of the DRA equalization ratios relied upon by them for the tax years at issue to prove disproportionate taxation. See id. The city had chosen "not to stipulate to the use of any equalization ratio in its property assessments," thereby "unduly magnif[ying]" the taxpayer's already difficult burden of proving the general level of assessment. Id. at 265-66. Given the lack of any evidence of the equalization ratios "actually used" by the city during the relevant tax years, the taxpayers "were compelled to urge" the BTLA to adopt the DRA equalization ratios for those years. Id. at 266 (emphasis added).

Because the city neither disclosed to the BTLA what the appropriate equalization ratios should be, nor disclosed how its ratios differed from the DRA ratios, we rejected the city's position that the taxpayers had to introduce

6

further proof of the general level of assessment beyond the DRA ratios. Id. at 266-67. Such further evidence, we surmised, would have simply "necessitated an expensive duplication" of the DRA's ratio studies. Id. at 266. We noted, however, that the taxpayer's burden of proving the general level of assessment did not relieve the city "of its preexisting obligation to use some method to equalize tax assessments to insure proportionality." Id. (quotation omitted). We explained that "[i]f a municipality does not use a uniform equalization ratio to ensure proportional assessments, it will have violated its obligation to appraise property fairly for taxation purposes." Id.

Thus, we held that a municipality must disclose its preferred equalization ratio in a tax abatement case before the BTLA and, "[i]f it employs its own uniform ratio . . . , a municipality must make a good faith offering of [that] ratio, as well as the methodology by which it computed [that] ratio." Id. (emphasis added). In such a circumstance, the taxpayer, then, "may offer proof that another ratio, perhaps the [DRA] ratio, more closely reflects the general level of assessment" and, in the event of a disparity, the BTLA, in its role as fact finder, "shall determine the equalization ratio most reasonably representative of the general level of assessment." Id. at 266-67.

Appeal of City of Nashua does not support PSNH's position in this case that the taxpayer can meet its burden of proving disproportionality simply by offering evidence of an alternative DRA ratio that the municipality did not use. See Appeal of Andrews, 136 N.H. at 64 ("When asked to consider taxpayer proportionality, we have consistently held that in order to achieve proportionality all taxpayers must be assessed at the same ratio."). Rather, in accordance with Appeal of City of Nashua, the City disclosed that, in setting assessments for tax year 2017, it applied the DRA 2016 median equalization ratio of 110.7%. It was undisputed that the City did not use the DRA "after the fact" 2017 median equalization ratio of 96.2%. Thus, the burden was on PSNH to prove, by a preponderance of the evidence, that Smith Hydro was assessed at a different percentage of fair market value than the percentage applied to other property in Berlin in 2017. See Milford Props., Inc., 120 N.H. at 582-83 (where there was no evidence that the town used an equalization ratio of 72% in the tax year at issue, it was incumbent upon the taxpayer "to establish the actual ratio of the assessed value to fair market value of other properties in the town for that year"); Stevens v. City of Lebanon, 122 N.H. 29, 33 (1982) (if a municipality does not stipulate to the validity of the DRA ratio "or otherwise indicate its acceptance of the accuracy by actual use," the taxpayer must introduce further proof of disproportionality). To conclude otherwise would result in determining the merits of PSNH's abatement request based on an equalization ratio that was not applied for tax year 2017 to any other taxpayer in Berlin.

We conclude that PSNH did not offer sufficient evidence to meet its burden. When agreeing to admit PSNH's exhibit showing the DRA 2017 median equalization ratio, the BTLA expressly noted that, standing alone, it did not establish the propriety of a particular ratio for Berlin.[1] Indeed, PSNH acknowledged that it bore the burden of proving the general level of assessment for property in Berlin for tax year 2017 and expressly "reserve[d] [its] right to present additional evidence" if the City introduced evidence regarding the general level of assessment. However, we have reviewed the record and agree with the City that PSNH failed to introduce any evidence regarding the general level of assessment in Berlin or supporting its preferred equalization ratio.

PSNH's expert testified that she had limited knowledge on the general topic of equalization ratios and, specifically, the process used by the DRA to determine such ratios. The City's experts testified concerning the equalization ratio the City used when setting the 2017 assessment for property in Berlin, and explained that the DRA 2016 ratio was used because it was the ratio that was known as of the April 1 assessment date and the September 1 deadline for submitting the assessed value of property in Berlin to the DRA. Nonetheless, during the cross-examination of the City's experts, PSNH did not question either expert about the general level of assessment in Berlin in 2017, the propriety of using any particular DRA equalization ratio, or whether the DRA 2016 ratio reflected the general level of assessment less accurately than the DRA 2017 ratio. Given that PSNH put forth no evidence on the general level of assessment in Berlin, we reject its assertion that we owe deference to the BTLA's determination. Although findings of fact by the BTLA are final, the issue before us is whether there is sufficient evidence in the record to support the BTLA's decision, which presents a question of law. See Appeal of Clark Hill Forest Prods., Inc., 128 N.H. 352, 356-57 (1986) (determining that the BTLA's decision was unsupported by sufficient evidence in the record); see also Demers Agency v. Widney, 155 N.H. 658, 661 (2007) (sufficiency of the evidence supporting an agency's factual findings presents a question of law).

PSNH asserts that the City's methodology of using the DRA 2016 median equalization ratio for assessment purposes in 2017 is "untethered from . . . good assessing practice." However, "[d]isproportionality, and not methodology, is the linchpin in establishing entitlement to a petition for abatement." LLK Trust v. Town of Wolfeboro, 159 N.H. 734, 739 (2010) (quotation omitted); see Porter v. Town of Sanbornton, 150 N.H. 363, 369 (2003). To the extent PSNH argues that the City's use of the DRA 2016 ratio rendered the City's 2017 tax

---

[1] We note that the DRA's equalization studies do not precisely coincide with any particular tax year. A tax year runs from April 1 to March 31. See RSA 76:2 (Supp. 2021). However, the DRA's equalization studies run from October 1 to September 30. See RSA 21-J:9-a, I (2020). Therefore, no DRA equalization ratio is based on every sale occurring during the twelve months immediately preceding April 1. The purpose of the DRA's annual equalization studies is to ensure that "any public taxes that may be apportioned" between municipalities "shall be equal and just." RSA 21-J:3, XIII (Supp. 2021).

year assessments illegal, "a complaint that the assessment [is] illegal as a whole [is] no ground for granting a petition for abatement." Bretton Woods Co. v. Carroll, 84 N.H. 428, 431 (1930) (explaining that abatements are granted "upon strictly equitable principles only, and equity requires that [a taxpayer] should not be relieved from [its] proportionate share of the common burden of taxation at the expense of the other taxpayers" (quotations omitted)).

Accordingly, we hold that the BTLA's decision to apply the DRA 2017 median equalization ratio to determine whether the tax placed on Smith Hydro was disproportionately higher in relation to its true value than to other property in general in Berlin was unjust and unreasonable. We remand for further proceedings consistent with this opinion.

Reversed and remanded.

MACDONALD, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

9