# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0198, <u>Pheasant Lane Realty Trust v. City of Nashua</u>, the court on February 12, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, City of Nashua, appeals an order of the Superior Court (<u>Colburn</u>, J.) granting tax abatements to the plaintiff, Pheasant Lane Realty Trust (taxpayer), with respect to the portion of the Pheasant Lane Mall that it owns (the Property). The City argues that: (1) we should overrule our holding in <u>Appeal of City of Nashua</u>, 138 N.H. 261 (1994), regarding a municipality's obligation to disclose its preferred equalization ratio in abatement contests; and (2) the trial court erred in determining that the taxpayer met its burden to prove that it paid a disproportionate amount of taxes in the relevant tax years. We decline to overrule any aspect of the <u>Appeal of City of Nashua</u> decision and conclude that the trial court did not err in determining that the taxpayer met its burden to prove that it paid a disproportionate amount of taxes. Accordingly, we affirm.

## I. <u>Facts</u>

The following facts were recited in the trial court's orders or relate to the contents of documents contained in the record. The Property is a significant portion of the Pheasant Lane Mall, a large shopping complex located in Nashua. In 2018, the City reappraised all real estate in Nashua. <u>See</u> RSA 75:8-a (2012) ("The assessors and/or selectmen shall reappraise all real estate within the municipality so that the assessments are at full and true value at least as often as every fifth year . . . ."). In conducting its reappraisal, the City employed a Computer Assisted Mass Appraisal (CAMA). According to the City, "CAMA produces a 'market appraisal' through 'mathematical modeling,' and relies, in part, on calculation tables." The City represented that it assessed all properties at 100% of their fair market value (FMV) as of April 1, 2018 and that it did not use an equalization ratio in the assessment process. Following the citywide reappraisal, the City assessed the Property at $148,056,396 for the 2018 tax year. The City then rounded the assessment to $148,056,400 for the 2019 and 2020 tax years, having determined that no "change" occurred that would justify a modification. <u>See</u> RSA 75:8 (2012).

After paying its taxes, the taxpayer sought abatements from the City, arguing that it paid a disproportionate amount of taxes in 2018, 2019, and 2020.  The City denied its requests.  The taxpayer then appealed each of the denials to the superior court.

The superior court consolidated the appeals and held a four-day bench trial during which it heard from multiple witnesses, including assessors and expert appraisers.  To evaluate whether the taxpayer was entitled to abatements, the court had to determine the Property's FMV for the relevant tax years.  The court found that the Property's FMV for 2018 tax year was $156,342,873, and concluded that the taxpayer was not entitled to an abatement for the 2018 tax year.  The court also found that the Property's FMV for the 2019 tax year decreased to $141,924,693, and to $110,936,748 for the 2020 tax year.  The court ruled that the taxpayer was entitled to abatements for the 2019 and 2020 tax years, concluding that the taxpayer met its burden of proving that it paid a disproportionate amount of taxes in both years.  The City filed a motion for reconsideration, which the court denied.  This appeal followed.

## II.  Analysis

On appeal, the City maintains that the trial court erred in determining that the taxpayer is entitled to abatements for the 2019 and 2020 tax years.  Although the City does not challenge the trial court's finding as to the FMV in 2019 or 2020, it does challenge the court's use of those values in determining whether to grant abatements to the taxpayer.

On a petition for abatement, the superior court has broad powers to order an abatement.  New Hampshire Highway Hotel, Inc. v. City of Concord, 119 N.H. 122, 125 (1979).  We will uphold the trial court's findings and rulings unless they lack evidentiary support or are legally erroneous.  Short v. LaPlante, Trs., 174 N.H. 384, 387 (2021).  "Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence."  N.H. Fish & Game Dep't v. Bacon, 167 N.H. 591, 596 (2015) (quotation omitted).  "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence."  Id. (quotation omitted).  We review the trial court's legal rulings and its application of law to fact de novo.  Short, 174 N.H. at 387.

In a tax abatement appeal to the superior court, the taxpayer bears the burden of proving by a preponderance of the evidence that it paid more than its proportional share of taxes.  See Appeal of City of Berlin, 174 N.H. 733, 739 (2022).  To satisfy this burden, the taxpayer must show that its property is assessed at a higher percentage of FMV than the percentage at which property

is generally assessed in the municipality. Id. When resolving tax abatement appeals, the superior court must make specific factual findings regarding the FMV of the taxpayer's property and the general level of assessment for the municipality. See id.; see also RSA 76:17 (Supp. 2024) (providing that if the selectmen do not grant an abatement and the taxpayer has complied with RSA chapter 74, the taxpayer may "apply by petition to the superior court in the county, which shall make such order thereon as justice requires").

The general level of assessment for a given tax year represents the proportion of the FMV at which property is generally assessed for tax purposes. Appeal of City of Berlin, 174 N.H. at 739. The taxpayer's burden of proving the general level of assessment in the municipality can be difficult to carry. Id. In certain circumstances, the Department of Revenue Administration's (DRA) equalization ratio may be used to meet the taxpayer's burden, such as when there is uncontroverted evidence that the municipality used the DRA's ratio in the assessment process for the tax year in question. Id. The DRA's equalization ratio represents the average ratio of assessed value to FMV in a municipality. Public Serv. Co. of N.H. v. Town of Seabrook, 133 N.H. 365, 376 (1990). However, if a municipality does not stipulate to the validity of the DRA's equalization ratio, or actually use that ratio, the taxpayer must introduce further proof of the general level of assessment. Appeal of City of Berlin, 174 N.H. at 739.

The taxpayer's burden of proving the general level of assessment, however, does not relieve the municipality of its preexisting obligation to use some method to equalize tax assessments to ensure proportionality. Appeal of City of Nashua, 138 N.H. at 266. Thus, in tax abatement cases, a municipality must disclose its preferred equalization ratio. Id. If a municipality employs its own uniform ratio to discount properties' FMVs to assessed values, it must make a good faith offering of this ratio, as well as the methodology by which it computed the ratio. Id. The taxpayer can then offer proof that another ratio, such as the DRA's ratio, more closely reflects the general level of assessment. Id. When the municipality does not offer an alternative to the DRA's ratios for the relevant tax years, the taxpayer's offering of the DRA's ratios shall satisfy its burden to prove the general level of assessment. Id. at 267.

We first address the City's argument that Appeal of City of Nashua should be overruled in part. Specifically, the City maintains that we must overrule our holding that "a municipality must disclose its preferred equalization ratio," and if "it employs its own uniform ratio to discount properties' [FMVs] to assessed values, a municipality must make a good faith offering of this ratio, as well as the methodology by which it computed the ratio." Id. at 266. The City contends that we should overrule our holding for two reasons. First, it asserts that the holding relied upon a prior version of the statute that required municipalities to "correct all errors" found in current appraisals. Second, it asserts that the holding does not reflect the current

3

statutory scheme, which, as we explained in <u>Merrimack Premium Outlets v. Town of Merrimack</u>, 174 N.H. 481, 485-86 (2021), requires "an actual change in the property's market value" to adjust an assessment between five-year reappraisals. <u>See</u> RSA 75:8 (2012) (amended 2022). The City's request that we overrule <u>Appeal of City of Nashua</u>, in part, triggers our stare decisis analysis. <u>See</u> <u>Seacoast Newspapers v. City of Portsmouth</u>, 173 N.H. 325, 333 (2020).

Stare decisis, "the idea that today's Court should stand by yesterday's decisions," <u>Kimble v. Marvel Entertainment, LLC</u>, 576 U.S. 446, 455 (2015), commands great respect in a society governed by the rule of law, and we do not lightly overrule a prior opinion. <u>Seacoast Newspapers</u>, 173 N.H. at 333 (quotation omitted). "Thus, when asked to reconsider a holding, the question is not whether we would decide the issue differently <u>de</u> <u>novo</u>, but whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed." <u>Id</u>. (quotation omitted).

We will overturn a decision only after considering: (1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. <u>Id</u>. Although these factors guide our judgment, no single factor is dispositive. <u>Id</u>.

The City's arguments address only the third factor of our stare decisis analysis. More specifically, the City implies that our conclusion in <u>Appeal of City of Nashua</u> regarding the disclosure of a municipality's preferred equalization ratio is an abandoned doctrine because it involved a statute that has since been amended. Although a tax assessment statute has changed since <u>Appeal of City of Nashua</u>, <u>compare</u> Laws 1969, 23:7 <u>with</u> RSA 75:8 (2012) (amended 2022), the statutory change has not rendered our conclusion unsound. <u>Cf</u>. <u>Seacoast Newspapers</u>, 173 N.H. at 334 (considering whether related principles of law have developed such that the old rule is no more than a remnant of an abandoned doctrine as a factor when deciding whether to overrule a holding). Regardless of that change, a municipality still must use some method to equalize tax assessments to ensure proportionality. <u>See</u> <u>Merrimack Premium Outlets</u>, 174 N.H. at 485-86; <u>Appeal of City of Nashua</u>, 138 N.H. at 266; <u>see also</u> N.H. CONST. pt. II, art. 5 (granting the legislature "full power and authority . . . to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within, the said state"). An equalization ratio ensures proportionality. <u>See</u> <u>Appeal of City of Nashua</u>, 138 N.H. at 266. Accordingly, our holding in <u>Appeal of City of Nashua</u> relied upon considerations that are still applicable in the context of abatement contests. <u>See</u> <u>id</u>.

4

The City argues that Merrimack Premium Outlets v. Town of Merrimack, 174 N.H. 481 (2021), "implicitly overturns, and certainly diverges from," Appeal of City of Nashua. We disagree. In Appeal of City of Nashua, we specified that our holding applied to "tax abatement cases" and in those cases "a municipality must disclose its preferred equalization ratio." Appeal of City of Nashua, 138 N.H. at 266. Conversely, the primary issue in Merrimack Premium Outlets was whether the Town of Merrimack had statutory authority to conduct the 2017 reassessment. See Merrimack Premium Outlets, 174 N.H. at 484-86. That case did not involve tax abatements or address a municipality's obligation to use or disclose an equalization ratio. See id. at 485-89. Nor did we reference Appeal of City of Nashua in Merrimack Premium Outlets. See id. Moreover, as the taxpayer observes, we affirmed our holding in Appeal of City of Nashua in 2022 in Appeal of City of Berlin, 174 N.H. 733, 739-41 (2022), only a few months after Merrimack Premium Outlets was decided. See Appeal of City of Berlin, 174 N.H. at 733; Merrimack Premium Outlets, 174 N.H. at 481. Therefore, we decline to overrule Appeal of City of Nashua.

We next consider whether the taxpayer met its burden to prove the general level of assessment. Pursuant to Appeal of City of Nashua, when a municipality does not offer an alternative to the DRA's equalization ratio, a taxpayer can prove the general level of assessment by offering the DRA's ratio for the relevant tax year. See Appeal of City of Nashua, 138 N.H. at 266-67. Here, the City acknowledged that it "did not use a DRA median equalization ratio" for the relevant tax years, nor did it use "any other equalization ratio." As a result, the taxpayer proved the general level of assessment by introducing the DRA equalization ratios for the 2019 and 2020 tax years. See id. at 266-67.

The City nonetheless asserts that the DRA calculated its equalization ratios after the City's deadline to set assessments passed, and, therefore, it could not have used those ratios because it was unaware of them. However, as we observed in Appeal of City of Nashua, a taxpayer's burden of proving the general level of assessment "does not relieve the city of its preexisting obligation to use some method to equalize tax assessments to [ensure] proportionality." Id. at 266 (emphasis and quotation omitted). There, as here, the City chose not to stipulate to the use of any equalization ratio in its property assessments. See id. As a result, the taxpayer in Appeal of City of Nashua requested that the DRA's equalization ratios for "the relevant tax years" be adopted. Id. We agreed. Id. at 266-67. Here, we reach the same conclusion. Accordingly, the trial court's decision to adopt the DRA's equalization ratios for the relevant tax years in this case was not error.

We next consider whether the taxpayer proved that it paid a disproportionate amount of taxes for the relevant tax years, 2019 and 2020. See id. at 265-67. To answer this question, we must compare the taxpayer's

level of assessment against the general level of assessment, here, the DRA equalization ratio. See id. at 265. This comparison requires that we consider the trial court's factual findings regarding the Property's FMV. See Appeal of City of Berlin, 174 N.H. at 739.

The City contends that the trial court erred as a matter of law when it applied the 2019 DRA equalization ratio to the 2019 FMV and the 2020 DRA equalization ratio to the 2020 FMV. As support for this contention, it asserts that using those FMVs was erroneous because the Property must be assessed at the same rate as all the other properties in the City, and here, the other properties were assessed in 2018. We disagree.

In this case, the median equalization ratios established by the DRA in the 2019 and 2020 tax years represented the general levels of assessment for those years, and were 88.8% and 83.0% respectively. However, during the 2019 and 2020 tax years the Property was assessed at approximately 104.3% and 133.5% of its undisputed FMV respectively. The "ratio of [the Property's] assessed value to FMV must not be any higher than the ratio of assessed values to FMV's throughout the rest of the [City]." Public Serv. Co. of N.H., 133 N.H. at 374. This evidence supports the trial court's conclusion that the Property was assessed at a higher ratio than other property in the City in 2019 and 2020. As such, the trial court properly granted the taxpayer abatements for tax years 2019 and 2020.

III. Conclusion

For the foregoing reasons, we conclude that the taxpayer met its burden to prove that it paid a disproportionate amount of taxes. The taxpayer introduced the DRA equalization ratios for the relevant tax years after the City did not disclose a uniform equalization ratio that it applied during the relevant tax years. See Appeal of City of Nashua, 138 N.H. at 266-67. Based upon the DRA equalization ratios, the taxpayer demonstrated that it paid a disproportionate amount of property taxes. Given this conclusion, we need not address the City's remaining arguments. Accordingly, we affirm the trial court's decision granting the taxpayer abatements for the 2019 and 2020 tax years.

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.

**Timothy A. Gudas,**
**Clerk**